UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LARRY GENE HEGGEM,<br>Plaintiff,<br>vs.<br>BRANDON KELLY and JEFF UTTECHT,<br>Defendants. | No. CV-07-258-LRS<br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, IN PART, *INTER ALIA*** |

**BEFORE THE COURT** are the Plaintiff's Motion For Reconsideration (Ct. Rec. 65), Defendants' Motion To Strike (Ct. Rec. 80), Defendants' Motion For Summary Judgment (Ct. Rec. 82), and Plaintiff's Motion For Appointment Of Counsel (Ct. Rec. 91). These motions are heard without oral argument.

## I. BACKGROUND

Plaintiff asserts an Eighth Amendment claim for excessive force under 42 U.S.C. §1983. Plaintiff claims that on April 12, 2007, while he was an inmate at the Washington State Penitentiary (WSP), Correctional Officer (CO) Brandon Kelly used an excessive amount of force upon him after escorting him back to his Intensive Management Unit (IMU) cell. An inmate is placed into his cell with handcuffs still on which are attached to a cuff retainer (aka "escort rope") which is threaded through a cuff port to the outside of the cell. An officer, in this case, CO Kelly, holds onto the cuff retainer outside of the cell while the handcuffs are removed. The inmate backs up and places his cuffed hands into the cuff port to

allow an officer to release the handcuffs. In this case, CO Andy Flores released the handcuffs. Plaintiff asserts that on April 12, 2007, while this was taking place, CO Kelly pulled extremely hard on the cuff retainer, causing injuries to him.

On March 17, 2008, the court filed an order denying Plaintiff's motion for summary judgment. (Ct. Rec. 60). In doing so, this court stated:

> At this juncture, the court is compelled to find there remains a triable issue (a genuine issue of material fact) whether Officer Kelly applied force "maliciously and sadistically for very purpose of causing harm" to the Plaintiff in violation of his Eighth Amendment rights. In this case, in addition to the differing accounts of [the] incident from the Plaintiff and Officer Kelly, there is a recorded surveillance video of the incident. The court intends to review that video later in these proceedings, perhaps at trial, although it is extremely unlikely that the court would be able to conclude as a matter of law from that video that there simply is no dispute that Officer Kelly applied force maliciously or sadistically as opposed applying it in a good-faith effort to maintain or restore discipline.

On March 27, the Plaintiff filed a "Request For Reconsideration" (Ct. Rec. 65) which this court has construed as a motion for reconsideration. In an order filed April 23, 2008 (Ct. Rec. 78), the court directed Defendants to respond to the motion and they have done so. Defendants have also filed their own motion for summary judgment asking the court to find as a matter of law that CO Kelly did not apply force to the Plaintiff maliciously and sadistically. Defendants' motion, although noted for hearing on June 30, has been fully briefed by both parties and is now at issue.[1] Related to these motions are the Defendant's motion to strike what it alleges are improperly filed pleadings by the Plaintiff, and yet another motion for appointment of counsel by the Plaintiff.

Plaintiff has submitted a copy of the aforementioned surveillance video to the court, the authenticity of which is apparently not disputed by the Defendants. Defendants have submitted their own copy of the video which appears to be

---

[1] This court noted Plaintiff's motion for reconsideration for hearing without oral argument on May 30.

identical to the video submitted by Plaintiff. The court has reviewed both of these videos.[2]

## II. SUMMARY JUDGMENT

### A. Motion To Strike

Defendant asks the court to strike certain documents the Plaintiff has filed on the basis these documents have been improperly filed because Plaintiff did not file a motion to file supplemental briefing, did not file a motion to supplement the record with regard to his motion for summary judgment or his motion for reconsideration, and has filed no supporting affidavit with regard to any of the miscellaneous evidence he has provided to the court. Defendants assert they cannot reasonably be expected to respond to such miscellaneous filings and therefore, they should be stricken from the record.

With regard to the vast majority of the evidentiary documents referenced herein (i.e., Kelly's initial infraction report, Flores' Inter-departmental memorandum, CUS Jensen's Interdepartmental Memorandum, the videotape of the April 12, 2007 incident, Kelly's answers to certain interrogatories), not only has the Plaintiff submitted them as evidence, but so have the Defendants in support of their own motion for summary judgment.[3] There simply is no dispute that these are

---

[2] Plaintiff's motion re requiring a new password to access the video (Ct. Rec. 94) is **DENIED as moot** as the court has had no difficulty accessing the video using the existing password provided by Plaintiff and counsel for Defendants.

[3] Certain medical reports submitted by the Plaintiff at Ct. Rec. 70 have not been considered in the summary judgment analysis. Plaintiff complains that Defendants have accessed asserted confidential medical grievances which he filed with prison officials, but Plaintiff has no basis to complain because he has put his physical and mental condition into issue by filing this lawsuit.

accurate copies of the originals of said documents. Defendants have not been prejudiced. Plaintiff's motion for summary judgment was denied by the court in an order dated March 17, 2008.[4] As discussed herein, Plaintiff's motion for reconsideration is being denied. Although Defendants' motion for summary judgment is not being granted in its entirety, Defendants have had a full and fair opportunity to reply to all of Plaintiff's evidence, including his personal declaration (Ct. Rec. 74).[5]

**B. Summary Judgment Standard/Reconsideration Standard**

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Zweig v. Hearst Corp.*, 521 F.2d 1129 (9th Cir.), *cert. denied*, 423 U.S. 1025, 96 S.Ct. 469 (1975). Under Fed. R. Civ. P. 56, a party is entitled to summary judgment where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505 (1986); *Semegen v. Weidner*, 780 F.2d 727, 732 (9th Cir. 1985). Summary judgment is precluded if there exists a genuine dispute over a fact that might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248.

The moving party has the initial burden to prove that no genuine issue of

---

[4] Defendants ask the court to strike Plaintiff's Ct. Rec. 51 and 55. Those are both documents the Plaintiff submitted in support of his motion for summary judgment which was denied by the court.

[5] Plaintiff has filed a motion to submit into evidence the written statement that Inmate Garrison prepared in response to written deposition questions tendered to him by Plaintiff. That motion (Ct. Rec 90) is **DENIED as moot** because the court has not found it necessary to consider Garrison's written statement in making its determinations regarding Plaintiff's motion for reconsideration and Defendants' motion for summary judgment.

material fact exists. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348 (1986). Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. The party opposing summary judgment must go beyond the pleadings to designate specific facts establishing a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548 (1986).

In ruling on a motion for summary judgment, all inferences drawn from the underlying facts must be viewed in the light most favorable to the non-movant. *Matsushita*, 475 U.S. at 587. Nonetheless, summary judgment is required against a party who fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual disputes regarding other elements of the claim. *Celotex*, 477 U.S. at 322-23.

" '[T]he major grounds that justify reconsideration involve an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Pyramid Lake Paiute Tribe v. Hodel*, 882 F.2d 364, 369 n.5 (9th Cir. 1989) (quoting 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4478, at 790); see *Frederick S. Wyle P.C. v. Texaco, Inc.*, 764 F.2d 604, 609 (9th Cir. 1985); see also *Keene Corp. v. International Fidelity Ins. Co.*, 561 F. Supp. 656, 665 (N.D. Ill. 1982) (reconsideration available "to correct manifest errors of law or fact or to present newly discovered evidence"). Such motions are not the proper vehicle for offering evidence or theories of law that were available to the party at the time of the initial ruling. *Fay Corp. v. Bat Holdings I, Inc.*, 651 F. Supp. 307, 309 (W.D. Wash. 1987); see *Keene Corp.*, 561 F. Supp. at 665-66.

///

///

///

**C. Eighth Amendment Excessive Force And Failure To Protect Analysis**

"[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7, 112 S.Ct. 995 (1992). Where prison officials have acted in response to an immediate disciplinary need, because of the risk of injury to inmates and prison employees, and because prison officials will not have time to reflect on the nature of their actions, the "malicious and sadistic standard," as opposed to the "deliberate indifference" standard, applies. *Whitley v. Albers*, 475 U.S. 312, 320-21, 106 S.Ct. 1078 (1986). When determining whether the force is excessive, the court looks at the "extent of injury . . ., the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Hudson*, 503 U.S. at 7, quoting *Whitley*, 475 U.S. at 321.

**1. Correctional Officer Kelly**

CO Kelly infracted Plaintiff for the April 12, 2007 incident. In his "Initial Infraction Report," Kelly stated:

> On 4-12-07 at approximately 0955 I (C/O Kelly, Brandon #7881) while escorting Inmate Heggem from West Yard #2 at IMU [Intensive Management Unit] inmate Heggem became verbally aggressive. Once in his cell[,] inmate Heggem attempted to pull away from the cuff retainer which caused me to hit my right hand on the open wicket causing the skin to break on my right thumb under my glove. At this time I was forced to place **steady pressure** on the cuff retainer in order to gain control of the inmate['']s hands so the restraints could be removed. Once the restraints were removed and the wicket closed[,] Sgt. Davis was notified of a Spontaneous Use Of Force. By resisting escorted movement[,] Inmate Heggem caused injury to a staff member (myself). Injury report filed.

(Ex. to Plaintiff's Ct. Rec. 67; Pg. 98 at Attachment D to Declaration of Lori

Scamahorn, Ex. 6 to Defendants' Statement of Facts, Ct. Rec. 84). (Emphasis added).

In an interrogatory answer, CO Kelly acknowledged that he did pull on the escort rope while it was still attached to the handcuffs around Plaintiff's wrists. (Ex. to Plaintiff's Ct. Rec. 72). The video footage confirms that CO Kelly pulled on the rope at least twice. Plaintiff contends Kelly's statement in his "Initial Infraction Report" that he placed "steady pressure" on the escort rope is inconsistent with his admission in his interrogatory answer that he pulled on the rope as confirmed by the video footage. Plaintiff asserts this shows that Kelly is not credible.[6] Defendants assert "[t]he fact that Defendant Kelly necessarily pulled on the cuff retainer prior to placing steady pressure on it does not negate the statement or indicate that Defendant Kelly lied." In another interrogatory answer, Kelly says he was attempting to maintain control of the escort rope because inmates are not allowed to possess such an item and had Kelly let go, the Plaintiff would have pulled the rope into his cell with him. (Plaintiff's Ct. Rec. 51 at pp. 15-16, "Plaintiff's Adding Additional Objective And Subjective Facts To His Motion For

///

///

///

///

---

[6] Plaintiff also points out that in his "Initial Infraction Report," Kelly did not say anything specific about the Plaintiff continuing to resist/struggle while CO Flores removed the cuffs. In an interview with Custody Unit Supervisor (CUS) Ron Jensen, however, Kelly apparently told Jensen that Plaintiff continued to struggle while Flores removed the cuffs. (See May 16, 2007 Interdepartmental Memorandum prepared by Jensen; Exhibit attached to Plaintiff's Memorandum Of Law In Support Of Summary Judgment, Ct. Rec. 42). In his Inter-departmental Memorandum, discussed *infra*, CO Flores does not mention anything specifically about the Plaintiff continuing to resist as the cuffs were removed.

Summary Judgment In His Behalf").[7]

CO Andy Flores, who assisted CO Kelly in escorting the Plaintiff to his cell in IMU on April 12, 2007, prepared an "Inter-Departmental Memorandum" regarding the incident. According to Flores, Plaintiff "became upset and very argumentative" as he was being escorted back to his cell. Added Flores: "Upon [Plaintiff's] placement back in IMU H-2 and during the process of removing the wrist restraint [Plaintiff] [p]ulled away which caused an injury to C/O Kelly #7881 to his right thumb. At that time, C/O Kelly pulled the cuff retainer back and restraints were removed." (Pg. 89 at Attachment D to Declaration of Lori Scamahorn, Ex. 6 to Defendants' Statement of Facts, Ct. Rec. 84).

In a declaration which he has filed (Ct. Rec. 74), Plaintiff says that after he had been escorted back to his IMU cell, as soon as the cell door shut, CO Kelly jerked on the escort rope "for no reason other than anger and disregard for my safety." According to Plaintiff, as a result of this, he was pulled back up against the cell door where he had to "straighten upwards and forward a little to regain [his] footing." Plaintiff says Kelly then pulled on the rope a second time "much harder," which had the effect of "dragging" Plaintiff's hand and wrists through the cuff port and injuring him. Plaintiff maintains he did not resist being uncuffed and never pulled on the escort rope after he had been placed inside the cell. Plaintiff disputes that Kelly injured his thumb, asserting that no pictures were taken of the

---

[7] Ex. 2 to Defendants' Statement Of Facts (Ct. Rec. 84) is a Declaration of Mike Kenney. Kenney is the Prisons Administrator of the East Command for the Washington DOC. Kenney asserts that when an offender attempts to obtain, by force, an officer's restraint equipment, it is an emergent situation. (Paragraph 11). Kenney adds that offenders housed in the IMU cannot be allowed to possess handcuffs, cuff retainers, or other restraint hardware because they could be used as weapons to harm officers, other offenders, or themselves. (Paragraph 9).

alleged injury as is the "standard" procedure.[8] Color photographs of the injuries to Plaintiffs's hands and wrists as a result of the incident are found in the court's hard copy file, attached as exhibits to Plaintiff's complaint and to "Plaintiff's Adding Additional Objective And Subjective Facts To His Motion For Summary Judgment In His Behalf." (Ct. Rec. 1 and Ct. Rec. 51).

Defendants note that the IMU is a maximum custody placement, the most restrictive level in Washington correctional system. Defendants contend that in the months preceding the April 12, 2007 incident, Plaintiff had received infractions for making threats against staff. It is not clear if this is borne out by Defendant's evidence and there is no indication regarding the disposition of the alleged infractions.[9] Even if Defendant was so infracted and found guilty of the infractions, while that appears relevant to what occurred on April 12, 2007, it does not conclusively answer the question of whether Kelly used excessive force on the Plaintiff.

According to Defendants, the injury that Kelly sustained to his right thumb is consistent with an officer attempting to hold on to a cuff retainer as it is being

---

[8] Plaintiff asserts that Kelly did not provide him with the "required prior verbal intervention" before the use of force occurred. Washington Department of Corrections (DOC) Policy 410.200 states that "[i]n all cases, staff presence and verbal intervention **should** occur prior to . . . [p]hysical intervention or control/impedance tactics requiring staff to physically control the offender(s)." (Emphasis added). (See pg. 47 to Attachment A to Declaration of Mike Kenney, Ex. 2 to Defendants' Statement Of Facts, Ct. Rec. 84). The policy does not state that verbal intervention "must" occur and there are situations where verbal intervention would not be possible and/or practical. Kelly's version of the April 12, 2007 incident suggests that was the case.

[9] The information re the alleged infractions is not contained in Defendants' statement of facts. There is reference to "Ex. 1, Att. A, p. 15-16," but the court does not find the information there.

pulled through a cuff port into a cell "which suggests that Plaintiff jerked away forcefully, pulling CO Kelly's hand into the cuff port as CO Kelly attempted to maintain possession of the cuff retainer." While it may "suggest" that Plaintiff jerked away forcefully, it does not rule out the possibility that Kelly initially pulled on the rope without any provocation from Plaintiff (i.e, Plaintiff did not jerk away), and that if in fact Kelly injured his thumb, it occurred subsequently when Plaintiff says, in an attempt to regain his balance after being pulled back to the door, he fell forward slightly. While Kelly did complete a Report of Work Related Personal Injury report regarding his thumb (Pg. 93 at Attachment F to Declaration of Lori Scamahorn, Ex. 6 to Defendants' Statement Of Facts, Ct. Rec. 84), he did not receive any medical treatment and hence, no medical report was completed, nor were any photographs taken of his thumb following the incident.

In ruling on summary judgment motions, the court is not to resolve conflicting evidence with respect to disputed material facts, weigh evidence, or make credibility determinations, all of which are the province of the trier of fact. *T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). This court previously denied Plaintiff's motion for summary judgment, finding it was necessary for a trier of fact to determine who was more credible- Kelly or Plaintiff- in determining whether Kelly applied force maliciously and sadistically to cause harm. After reviewing the materials accompanying Plaintiff's motion for reconsideration and Defendants' motion for summary judgment, the court arrives at the same result. The critical question is whether after he was placed in the cell, Plaintiff in fact pulled on the cuff retainer and away from the cell door. Plaintiff says he did no such thing. Kelly says the Plaintiff did so, resulting in Kelly scraping his thumb against the cuff port and requiring him to pull back on the escort rope. Plaintiff acknowledges that after the first pull by Kelly, he [Plaintiff] fell forward slightly in an effort to regain his balance and it was then that Kelly

pulled on the rope again. In his declaration (Paragraph 7 at Ex. 3 to Ct. Rec. 84, Defendants' Statement Of Facts), Kelly acknowledges he did pull a second time on the cuff retainer (escort rope). The video confirms that Kelly pulled on the rope twice. The video, however, does not reveal whether when Plaintiff was placed in the cell, he immediately pulled away from the door, or whether Kelly simply pulled on the cuff retainer without the Plaintiff doing anything but standing there waiting for the cuffs to be removed.[10] It is also not apparent from the video whether Kelly scraped his thumb on the cuff port. As the video shows, the entire incident was over in a couple of minutes or less and the critical events at the door to the cell occurred in rapid succession in a matter of seconds.[11]

According to Defendants, because Plaintiff argues that Kelly was not aware that he had injured the Plaintiff, this "suggests that even Plaintiff does not believe Defendant Kelly acted with 'a sufficiently culpable state of mind.'" The court disagrees with that contention because there is no requirement that Kelly have been aware that he in fact injured the Plaintiff. All that is necessary is that Kelly have acted with the intent to harm the Plaintiff. Furthermore, in his declaration, Kelly acknowledges seeing that Plaintiff's hands were scraped and bruised, although he claims he did not see any blood. (Paragraph 7 at Ex. 3 to Ct. Rec. 84, Defendants'

---

[10] On the video, one cannot see Heggem once he is placed inside the cell and the door is shut.

[11] Mike Kenney opines that based on his review of the video recording and the documents associated with the use-of-force incident, Kelly's use of force was appropriate and necessary. While Kenney is entitled to his opinion, including his opinion that Plaintiff must have jerked away forcefully so as to prompt Kelly to pull on the cuff retainer rope, this court has to decide for itself whether there is a genuine issue of material fact whether Plaintiff did so and whether a jury should have the final say.

Statement Of Facts).

The court concludes there is a genuine issue of material fact whether Kelly used excessive force on the Plaintiff. The question then becomes whether Kelly is nonetheless entitled to qualified immunity from damages. A qualified immunity analysis has two prongs: (1) taken in the light most favorable to the aggrieved party, do the facts alleged show the officer's conduct violated a constitutional right, and (2) if a constitutional right was violated, was that right clearly established? *Beier v. City of Lewiston*, 354 F. 3d 1058, 1064 (9th Cir. 2004)(*citing Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151 (2001)). Taken in a light most favorable to the Plaintiff, the facts alleged show CO Kelly's conduct violated Plaintiff's Eighth Amendment right to be free from excessive force. There is a genuine issue of material fact whether Kelly employed excessive force on the Plaintiff. Furthermore, at the time of the incident, it was clearly established that if the Plaintiff did nothing more than stand in his cell and not pull away on the cuff retainer rope, Kelly was not entitled to pull back on the rope with the intent to harm the Plaintiff. It remains to be determined what Plaintiff did or did not do, and if Kelly intended to injure the Plaintiff. If the trier of fact finds Plaintiff did pull on the cuff retainer rope and that Kelly was entitled to pull back so he did not lose his equipment, there is no "excessive force" and Kelly does not need qualified immunity.

Defendants assert "[a] reasonable prison official could believe it is lawful conduct to pull twice on a cuff retainer rope in order to maintain possession and control of the equipment in IMU and prevent a dangerous offender from obtaining possession of it" and therefore, Kelly is entitled to qualified immunity. There is a genuine issue of material fact whether Kelly pulled on the cuff retainer rope in order to maintain possession and control of his equipment, or if he pulled on the rope in a malicious and sadistic effort to cause harm to the Plaintiff. From the

evidence presented thus far, a reliable inference can arguably be drawn that Kelly intended to inflict pain. *Manier v. Cook*, 394 F.Supp.2d 1282, 1288 (E.D. Wash. 2005), citing *Whitley*, 475 U.S. at 322 (allegation of cruel and unusual punishment should proceed to trial only if the evidence supports a reliable inference the prison official intended to inflict pain). A trier of fact needs to determine whether that inference is supported by a preponderance of the evidence.[12]

**2. Superintendent Uttecht**

Supervisory liability arises only upon a showing of "personal participation." A supervisor is liable for the constitutional violations of subordinates only if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). There simply is no evidence that WSP Superintendent Uttecht participated in or directed the alleged excessive force employed by Kelly on April 12, 2007, or that he somehow had the means to prevent the incident, but failed to do so. Therefore, there is no basis for supervisory liability.

It appears, however, that Plaintiff may be alleging that Uttecht is liable in his own right, not as a supervisor, for failing to take adequate steps after the incident to protect the Plaintiff from CO Kelly. In his motion for summary judgment, Plaintiff says his complaint about Uttecht is that he allowed Kelly to continue to escort the

[12] In *Manier*, the court granted summary judgment to the defendant jail officials on plaintiff's Eighth Amendment excessive force claim where it was **undisputed** that the plaintiff refused to return to his cell when ordered to do so and became verbally abusive. Therefore, there was no evidence to create a genuine issue of material fact that defendants' subjective intent was to inflict serious pain as opposed to maintaining and restoring order at the jail. 394 F.Supp.2d at 1288.

Plaintiff "at least twice on two separate occasions and days, causing more fear and trauma to the plaintiff." According to Plaintiff, these occasions were within four weeks following the April 12, 2007 incident.

In general, a prison official's deliberate indifference to a substantial risk of harm to an inmate violates the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 827, 114 S.Ct. 1970 (1994). A prisoner claiming such a violation must show: (1) the deprivation he suffered was "objectively sufficiently serious" (objective element); and (2) the defendant possessed a sufficiently culpable state of mind (subjective element). *Id*. at 834. Where the claim is predicated upon failure to protect, the deprivation is deemed to be sufficiently serious if there was a substantial risk that the prisoner would suffer serious harm. *Id*. A prison official can only be held liable if he (1) is aware of the facts from which he could infer a substantial risk of serious harm, and (2) actually drew that inference. *Id*. at 837.

Plaintiff cannot show he suffered an objectively sufficiently serious deprivation because there is no evidence that anything occurred during the occasions subsequent to April 12, 2007, when Kelly escorted the Plaintiff. Those escorts occurred without incident. There is no allegation or evidence that Kelly used any kind of force against the Plaintiff on those occasions, or that Kelly said anything to the Plaintiff to instill in him a reasonable fear of a repeat of the incident of April 12, 2007, at least Plaintiff's version of that incident. Compare *Gibson v. Brooks*, 335 F.Supp.2d 325, 333 (D. Conn. 2004)(when an inmate informs corrections officers about a specific fear of assault and is then assaulted, this is sufficient to proceed on a claim of failure to protect). Furthermore, assuming Uttecht was fully apprised of the April 12, 2007 incident shortly after it occurred and prior to Kelly escorting the Plaintiff on subsequent occasions, there is no evidence creating a genuine issue of material fact that Uttecht was aware of facts from which he could infer a substantial risk of serious harm. At most, Uttecht was

presented with two different versions of the incident: Plaintiff's version that Kelly pulled on the escort rope for no valid reason and Kelly's version that he pulled on the escort rope because Plaintiff pulled away and Kelly was concerned he would lose his equipment. There was no compelling reason why Uttecht should have believed Plaintiff's version instead of Kelly's version. As noted, the video is inconclusive. Apparently, Uttecht chose to believe Kelly's version. A trier of fact may see it differently, but that does not mean Uttecht is liable under the Eighth Amendment for failing to protect the Plaintiff by allowing Kelly to escort the Plaintiff on two occasions after the April 12, 2007 incident.

**III. MOTION FOR APPOINTMENT OF COUNSEL**

This is Plaintiff's fourth motion for appointment of counsel. Obviously, Plaintiff's three previous motions were all denied by the court (Ct. Rec. 14, 24 and and 61). The last time the court denied Plaintiff's motion in an order filed March 18, 2008, the court stated:

> Although the court has denied Plaintiff's motion for summary judgment, that does not mean he will not ultimately succeed on the merits of his claim. Plaintiff's motion shows that he continues to exhibit an ability to adequately articulate his claim. A motion for summary judgment from the Defendants is anticipated. If Plaintiff's claim survives summary judgment and this matter does not settle and will be tried, the court will reconsider appointment of counsel for the Plaintiff at that time.

28 U.S.C. §1915(e)(1) does not authorize the court to require counsel to represent a *pro se in forma pauperis* litigant, but only to request such representation on a *pro bono* basis. *Mallard v. U.S. Dist. Court*, 490 U.S. 296, 304-05, 109 S.Ct. 1814 (1989). Appointment of counsel is limited to cases presenting "exceptional circumstances." Determining whether "exceptional circumstances" exist requires evaluating "the likelihood of success on the merits and plaintiff's ability to articulate his claims *pro se* in light of the complexity of the

legal issues involved." *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991).

Plaintiff has been able to adequately articulate his claims and his arguments thus far, well enough in fact to withstand Defendants' motion for summary judgment regarding the excessive force claim against Defendant Kelly. His summary judgment and reconsideration presentation and his response to Defendants' summary judgment motion have been a bit scattershot and there have been some procedural deficiencies. Those can be overlooked, however, for the reasons set forth above discussing Defendants' motion to strike. Although a jury trial is a step up from the paperwork battle on summary judgment, the court believes Defendant is capable of adequately presenting and articulating his claims before a jury. The legal issue of excessive force is not complex and to the extent permissible and appropriate, the court will guide the Plaintiff regarding the proper procedure for presenting his case . This case essentially boils down to the Plaintiff's word versus CO Kelly's word. At this juncture, particularly because the video is inconclusive, the likelihood of Plaintiff succeeding on the merits of his claim is no more than 50 percent.

Plaintiff indicates he has had some difficulty with access to the law library and to his personal legal materials. The court is fully versed in the law relating to excessive force and needs no assistance from the Plaintiff in that regard. The court is concerned, however, about Plaintiff's recent allegation that all of his materials pertaining to his case have been seized by personnel at Plaintiff's current place of incarceration, the Washington State Reformatory in Monroe. Although the Plaintiff has not filed a motion with regard to the alleged seizure of his materials, the court will direct Defendants' counsel to investigate this allegation and advise the court regarding the status of Plaintiff's legal materials. If the Plaintiff is going to present his case before a jury, he is entitled to his materials and to sufficient access to the law library in order to prepare his case.

## IV. CONCLUSION AND REFERRAL FOR SETTLEMENT CONFERENCE

There is a genuine issue of material fact whether CO Kelly employed excessive force on the Plaintiff. Therefore, Plaintiff's motion for reconsideration (Ct. Rec. 65) is **DENIED** and Defendants' motion for summary judgment, to the extent it seeks judgment on the excessive force claim alleged against CO Kelly (Ct. Rec. 82), is **DENIED** .

There is no genuine issue of material fact that Uttecht "personally participated" in the alleged excessive force perpetrated by Kelly on the Plaintiff on April 12, 2007, or that Uttecht failed to protect the Plaintiff by allowing Kelly to escort the Plaintiff on two occasions after the April 12, 2007 incident. Therefore, Defendants' motion for summary judgment. to the extent it seeks judgment on the claims against Uttecht (Ct. Rec. 82), is **GRANTED**. Defendant Uttecht is award judgment on the Eighth Amendment claims asserted by Plaintiff against him.

For the reasons set forth above, Defendants' Motion To Strike (Ct. Rec. 80) is **DENIED** and Plaintiff's Motion For Appointment Of Counsel (Ct. Rec. 91) is **DENIED**. Also, as discussed in footnotes 2 and 5 *supra*, Plaintiff's motion re password (Ct. Rec. 94) and Plaintiff's motion re statement of Inmate Garrison (Ct. Rec. 90) are **DENIED as moot**.

The court is hereby **REFERRING** this matter to U.S. Magistrate Judge James P. Hutton for the purpose of conducting a telephonic settlement conference. Judge Hutton will conduct a status conference with the parties for the purpose of arranging the settlement conference and will thereafter issue an order outlining the requirements for the conference.

///

///

///

**IT IS SO ORDERED.** The District Executive shall forward copies of this order to the Plaintiff, to counsel for the Defendants, and to Magistrate Judge Hutton.

**DATED** this 20th of June, 2008.

***s/Lonny R. Suko***

LONNY R. SUKO
United States District Judge